Alice DORIA, Appellant,

v.

**TEXAS DEPARTMENT OF HUMAN RESOURCES, Appellee.**

No. 13–87–347–CV.

Court of Appeals of Texas,
Corpus Christi.

March 31, 1988.

Robert L. Wyatt, C.B. Dyer & Associates, Corpus Christi, for appellant.

Carlos Valdez, Co. Atty., Adolfo Aguilar, Asst. Co. Atty., Nueces Co. Atty's Office, Nueces County Courthouse, Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and BENAVIDES, JJ.

## OPINION

UTTER, Justice.

Alice Doria appeals from a judgment of the trial court which terminated her parental rights over two of her four children, D.D. and S.D., and which appointed the Texas Department of Human Services as the managing conservator of the children.[1] We reverse the judgment of the trial court and remand for a new trial.

Trial was to the court. At the conclusion of the evidence, termination was ordered pursuant to Section 15.02 of the Texas Family Code Annotated (Vernon 1986). Although the trial court's judgment does not specifically reflect the basis for the termination, all of the proof offered by the Department of Human Resources was directed at the alleged violation of subsections D and E of Section 15.02(1). The trial court's letter to counsel dated June 8, 1987, states that the court found violations of subsections D and E, which are as follows:

\* \* \* \* \* \*

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger the physical or emotional well-being of the child;

\* \* \* \* \* \*

The trial court further found that the termination was in the best interest of the minors.

Appellant's fifth and sixth points of error assert that the evidence was legally and factually insufficient to support the trial court's judgment terminating appellant's parental rights.

 At the outset, we note that the courts of this state continue to adhere to the proposition that termination of parental rights is of constitutional dimensions and can never be justified absent the most solid and substantial reasons. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985); *In re G.M.,* 596 S.W.2d 846, 846 (Tex.1980); *Chesser v. Texas Department of Human Resources,* 595 S.W.2d 615, 617 (Tex.Civ.App.—Corpus

---

1. The parent-child relationship between Gilbert Doria, the father of D.D., was terminated based on an irrevocable affidavit of relinquishment of parental rights signed by Gilbert Doria which had previously been executed and filed with the court in accordance with Tex.Fam.Code Ann. § 15.03 (Vernon 1986). The trial court also ordered the parental rights of the unknown father of S.D. terminated and no appeal has been sought as to either of these terminations. Both fathers were represented by attorneys ad litem at trial.

Christi 1980, no writ). A strong presumption exists that a child's foremost interest is best served by keeping custody in and with the natural parents. *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976); *Gonzalez v. Texas Department of Human Resources,* 581 S.W.2d 522, 527 (Tex.Civ.App. —Corpus Christi 1979, writ ref'd n.r.e.); *cert. denied,* 445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319, (1980). Consequently, the evidence in support of termination must be clear and convincing before a court may involuntarily terminate parental rights. *Holick,* 685 S.W.2d at 20.

■ Clear and convincing evidence is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction of the truth of the allegations sought to be established. *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979). This is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *Id.* While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id.*

■ In reviewing legal and factual sufficiency points of error, the Texas Family Code is governed by the same general rules applicable to other civil cases. *Gonzalez,* 581 S.W.2d at 527; *In re E.S.M.,* 550 S.W. 2d 749, 752 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). In considering "no evidence" or "insufficient evidence" points of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex. 1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.).

In further compliance with the Supreme Court's mandate set forth in *Pool v. Ford Motor Co.,* supra., we will detail, as succinctly as possible, the evidence relevant to the issue under consideration.

Dr. Leslie R. Fricke, a psychologist who interviewed appellant once for about thirty minutes approximately one year before the trial, made the following conclusions, based on that interview and the results of three to four hours of various tests, regarding the appellant: 1) that the appellant's intellectual ability was in the "average" range; 2) that she did not have any classic kind of mental problems and was aware of the consequences of her actions; 3) that she was "passive" and tended to be attracted to abusive men; 4) that her Jesness inventory test revealed she was very immature, naive, easily influenced by others, tends to repress her problems, may express anxiety through somatic complaints, shows a distrust for authority figures, blames others for her problems, shows sensitivity to criticism, has a poor sense of self, has an uneven conscious development, and that she may not have normal feelings of guilt; and 5) that she would benefit from parent-education training, but "will need a great deal of help in order to assist her in developing the necessary skills to be an effective mother." Dr. Fricke concluded that appellant exhibited signs of a neglectful mother-type pattern, and was "someone who would engage in perhaps leaving the children to go out and have a good time ... if that was the choice that was made."

Dr. Fricke also testified, however, that she had never observed appellant around her children and that she had no personal knowledge as to whether appellant had ever engaged in such conduct and/or knowingly placed her children with persons who engaged in conduct which endangered the children's physical and emotional well-being. Dr. Fricke stated that appellant expressed a great deal of love and affection for her children and was very concerned that she would lose them.

Several witnesses, including caseworkers and child protective specialists, testified that D.D. and S.D., sixteen months and two-and-a-half months old, respectively, were taken by the police and placed in appellee's care and custody after having

been left at home alone. At that time, the appellant was unemployed and the residence did not have electricity, running water, heat, and air conditioning. There was no food in the refrigerator or cupboards and there were large cracks in the wall. Apparently, based on these observations, many of these witnesses testified appellant had endangered D.D. and S.D.'s physical and emotional well-being.

Although appellee attempted to show that both appellant and Mrs. Webb, appellant's mother, have told others that appellant has left the children unattended on occasions other than the original incident, when given the chance to explain, they both stated that when the appellant goes out, the children are left in Webb's care. In fact, both the appellant and Webb expressly denied saying that the children had been left alone before the original incident. No other evidence was submitted in this regard.

Several of the caseworkers and child protective specialists further testified that appellant never completed the department's plan for her to regain her children which included employment, parenting skills classes, adequate housing and child visitation. Appellant did find a part time job, but was terminated two weeks after her benefits were cut off. Regarding her parenting skills, the testimony indicated that no "approaches" had been successful and that she lacked the motivation "to follow through." On some occasions appellant would be confused and inattentive, while at others she would participate actively, appeared very concerned, seemed very committed and left the class very optimistic with some goals in mind. Further testimony showed that the residence has been repaired and has had running water and electricity for a long period of time. Appellant visited her children on the average of once every six weeks, but apparently missed two-thirds of her scheduled visits. Dr. Kay Nelson opined appellant's biggest problem was her failure to visit her children and that there was concern about appellant's ability to provide basic care and ensure the children's safety from abusive persons.

Dr. Steve Oshman, a pediatrician, testified that D.D. had poor weight bearing on his extremities, had a mild upper respiratory infection, right ear infection, multiple sores on his skin, and suffered from developmental delay in both the motor and psychological skills. D.D. was seen by a neurologist, but no physical causes were found for the developmental delay. Dr. Oshman concluded D.D.'s problems stemmed from parental neglect. Dr. Oshman stated that S.D. had diaper rash, multiple body sores, and an ear infection, but did not mention whether S.D. suffered developmental delay.

On cross-examination, Dr. Oshman testified that diaper rash and ear infections are a common occurrence among infants but opined that they were not common among two month olds. However, he also agreed that the lack of running water would lead to a greater possibility of diaper rash and/or infection. Dr. Oshman also stated that the "body sores" observed on D.D. were common among South Texas children and that many sores are secondary to insect bites. He further testified that such sores were uncommon to two month olds such as S.D. since they would not yet be ambulating outside. However, no evidence was introduced concerning what kind of insects had caused the sores, or whether those insects could be found in the home.

Police Officer Dwayne Pacheco was dispatched to appellant's home on March 27, 1986, in response to a "disturbance call." Juan Solis, a man who was apparently appellant's boyfriend, was "terrorizing" appellant, Webb, and the children, and had apparently ripped the screen, broken the door, and jabbed appellant's daughter, M.D., in the eye. Webb told the officer that appellant "didn't take care of M.D. and that M.D. needed to be with her in order to get proper care and treatment and that ... [appellant] was not clothing her daughter, not taking care of her, she

wasn't bathing her or giving her food or the fundamental necessities."

Appellant has lived with her mother, Margarita Webb, for over five years. Webb testified that on November 13, 1984, she went out and left appellant to take care of the babies. When she returned home, neither appellant nor the children were there. Upon appellant's return home, Webb called the police, and discovered that the "babies" were taken because they were left by themselves.

Webb testified on cross-examination that both she and appellant participate in M.D. and J.D.'s child care, the two children still residing at home. She stated that appellant has never physically abused the children, that appellant does not drink heavily or often, and that she and appellant love the children very much. The home has had water and electricity for a long time and the cracks in the sheetrock have been fixed. Webb testified that appellant still goes out with Solis sometimes, but that Solis is no longer permitted to come into the house.

Donald Paquin, a child protective services worker for the Texas Department of Human Services, was asked on cross-examination to read a statement he wrote in response to a Department of Human Services inquiry: "Why is D.H.R. seeking termination in this case in your own words." He responded, "The department has been managing conservator of the children for three years. The mother has not made any progress towards the plan of service. The mother has only minimal contact with the children. The youngest child is afraid of the mother. The children no longer relate to Alice [appellant] as a mother. [Termination] is in the best interest of the children." Paquin admitted that nowhere in the report did he mention that appellant physically abused the children or left them alone for days or weeks at a time. In his opinion, it was in the best interest of the children because the Department has had custody of the minor children for three years and that *"it is not fair to the chil-*

*dren to leave them hanging loose like that for years at a time."* (emphasis added). Paquin further testified that during his nine-month supervision of the appellant's household, the child care for the other two children in appellant's custody has met "the minimum requirements for where we don't—the child is taken care of."

Alice Doria, appellant, is the thirty year old mother of D.D., S.D., M.D., and J.D. She testified that M.D. and J.D. still live with her and that, to her knowledge, there is no present action to take them away. She said she loves her children and adequately feeds, clothes, and takes care of them, and shows them love and affection. She expressly denied ever leaving M.D. or J.D. alone for days at a time and explained that what she meant is that she left her children with Webb when she was gone. She confirmed that the house now has running water, plumbing, electricity, gas, heat and that there are no more holes in the wall. She stated running water makes it easier to bathe or otherwise care for the children. She further denied ever physically or emotionally abusing any child.

On cross-examination, appellant admitted she was still seeing Solis and that Solis "hit" her when they were living together in the apartment. However, appellant has moved out of the apartment and testified that although she still sees Solis, he is no longer permitted in the house. Appellant stated that she does not like anyone hitting her kids and testified she would report Solis if he ever abused them.

Appellant further testified that she had learned a lot from her counseling sessions and considers her mother to be a good friend. She concluded by saying "I need a chance. That's all I ask for is a chance to live my life and be with my own family like everybody else does. That's all I want."

Lillie Cuellar, appellant's 31 year old sister, observed appellant around appellant's children in the past. She testified that appellant treated her children with love and affection, and that she never saw appellant physically or emotionally abuse her chil-

dren. She said M.D. and J.D. "look all right," and show love and affection for appellant such as by hugging and kissing her.

On cross-examination, Cuellar testified she once told Sliter, an employee of the Texas Human Resources Department, that appellant should not have custody of her children because every time she would go over there Webb was taking care of them. Cuellar testified that appellant should not be given custody of D.D. and S.D. because of the lack of attention appellant would give her children.

Section 15.02 of the Texas Family Code clearly states that the termination of a parent-child relationship may not be based solely upon what is in the best interest of the child, but *must* also be based on one or more of the acts and omissions listed under subdivision (1) of the section. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 537 (Tex.1987); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex.1976). The trial court relied on Subdivision (1)(D) and (1)(E) to sustain its verdict, as previously set forth in this opinion.

█ The most compelling evidence offered by appellee to show endangerment to the children's physical and emotional well-being was that appellant left D.D. and S.D. alone on one occasion in a home with no electricity, water, or heat, and which had cracks in the wall. Several witnesses testified that leaving children alone in these surroundings endangered the physical and emotional well-being of the children. Certainly the fact appellant and her children were living in poverty should not be a basis for termination of parental rights. Even if it were, the record reveals the home has been repaired and utilities long since connected. Moreover, although the record reflects she left D.D. and S.D. alone on the day they were removed by the police, the evidence is less than clear and convincing concerning whether appellant ever left the children alone in the past and no evidence was offered to show that since that time, appellant has left M.D. or J.D. alone by themselves.

█ Closely related to the home environment issue is the children's health. The testimony revealed that although the children had various ailments such as infection, body sores and diaper rash, there was strong reason to believe that this was related to their socio-economic situation. The developmental delay experienced by D.D. appeared to be related to parental neglect, but was not, by itself, clear and convincing evidence to show appellant had endangered the children's physical and emotional well-being. Unlike *E.L.B. v. Texas Department of Human Services*, 732 S.W.2d 785 (Tex. App.—Corpus Christi 1987, no writ) and *Gonzalez v. Texas Department of Human Services*, 581 S.W.2d 522 (Tex.App.—Corpus Christi 1979, writ ref'd n.r.e.), there was simply no evidence offered such as height and weight deficiencies resulting from inadequate or unhealthy food consumption, presence of lice and internal parasites, failure to thrive, or existence of veneral diseases.

Other evidence indicated appellant was unable to comply with the Department of Human Resources plan of service to regain her children, which included elements such as attending parental classes, obtaining employment, getting adequate housing, and visiting D.D. and S.D. It appears from the record that the Department of Human Services' caseworkers were extremely upset by appellant's failure to attend these parenting and counseling classes.

We do not feel appellant has shown noncompliance. The record indicates that despite appellant's low intelligence, lack of skills, transportation problems and poverty: she has attended a large number of parental skill classes; she has had two part-time jobs since her children were removed; she moved into an apartment for a short time; the defects in the home have been substantially corrected; and she has visited D.D. and S.D. on the average of once every six weeks. We feel these were difficult milestones considering appellant's economic situation.

The great weight and preponderance of the evidence reveals appellant was striving to conform with the plan of service to

regain her children. Additionally, the evidence showed that even under the Department's standards appellant was providing such "adequate" or "minimal care" to the two children still living at home, that the Department of Human Services has not sought either removal or termination of parental rights as to those children.

Numerous witnesses, including those testifying for appellee, stated appellant loved her children and was sincerely concerned about getting D.D. and S.D. back. The evidence further supported this fact by showing that M.D. and J.D. would return appellant's love and affection by giving her hugs and kisses. No evidence was offered to controvert these facts.

Although "endanger" under Section 15.-02 does not require that the conduct be directed at the child or that the child suffer actual injury, there must be "clear and convincing evidence" that the parent has exposed the child to loss or injury. We do not believe that leaving a child unattended on one occasion and the developmental delay under the facts of this case is sufficient to clear and convincingly show that appellant has pursued a course of conduct which endangered the physical and emotional well-being of the children.

There is also less than clear and convincing evidence to show that appellant ever engaged in a course of abusive conduct or that she placed D.D. and S.D. with persons who engaged in conduct which endangered their physical or emotional well-being. The only evidence offered in this regard concerned Juan Solis. Although the record reveals that appellant had been abused in the past by Solis, there was uncontroverted evidence offered to show that he had not recently abused her. Moreover, there was less than convincing evidence offered to show whether the abuse is likely to continue in the future.

The only evidence of Solis' abuse against a child concerned M.D. However, this abuse apparently resulted when appellant was trying to end her relationship with Solis and prevent Solis from entering the premises. There is no evidence that any of appellant's children have been "physically abused" prior to or since that time by any person. Moreover, there is no evidence that Solis has present contact with any of appellant's children and there is uncontroverted evidence that Solis is no longer permitted in their home. There is also no evidence that any child was left alone or physically abused by Solis when he was living in an apartment with appellant. The only evidence presented by appellee was that in the future there could be a possibility of potential abuse of D.D. and S.D. by Solis.

We find the record contains some evidence, but not factually sufficient evidence, to be clear and convincing to sustain the decree of termination entered by the trial court. *In the Interest of A.L.F.*, 690 S.W. 2d 106, 107 (Tex.App.—Beaumont 1985, no writ); *Chesser*, 595 S.W.2d at 621; *Matter of R.E.W.*, 545 S.W.2d 573, 583 (Tex.Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). The "clear and convincing" standard of proof has been intentionally placed on the party seeking the termination of parental rights, so as to create a higher burden to fulfill because of the severity and permanence of the termination of the parent-child relationship. It is this burden which appellee has not met.

As stated in the *Matter of R.E.W.*, 545 S.W.2d 573, 582 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.),

> The harsh and irrevocable remedy of termination is not justified where the evidence shows that a parent's failure to provide a desireable degree of care and support of the child is due solely to lack of intelligence, training, or misfortune. *D— F— v. State*, 525 S.W.2d 933, 940 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ).

The no evidence point is overruled and the factual insufficiency point is sustained. We have considered appellant's remaining points of error and they are overruled.

The judgment of the trial court is REVERSED and the cause is REMANDED to the trial court for a new trial.