Elida YBARRA, Appellant,

v.

The TEXAS DEPARTMENT OF HUMAN SERVICES, Appellee.

No. 13–93–102–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 16, 1993.

Jeanne Chastain, Portland, for appellant.

C.F. Moore, Jr., Dist. Atty., Corpus Christi, for appellee.

Before SEERDEN, C.J., and DORSEY and YAÑEZ, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from a bench trial which terminated appellant Elida Ybarra's parental rights to her five children. The Department of Human Services ("DHS") sued to involuntarily terminate both parent's rights. Mrs. Elida Ybarra appeals; Mr. Cruz Ybarra, Sr. does not. We reverse and remand.

Ybarra claims error in the trial below on three bases: first, that termination of her parental rights is not in the best interest of the children and is not based on clear and convincing evidence; second, that the judgment is not supported by legally sufficient evidence of endangerment; and third, that the trial court failed to appoint counsel for her.

1. All statutory references are to TEX.FAM.CODE ANN.

## I. STANDARDS FOR INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

The relationship between parent and child is perhaps the strongest bond between people in nature and the keystone of society. The transmission of cultural values, social status, and title to land has historically been dependent on one being the child of another. The parent-child relationship is recognized and protected by law to such a degree it is of federal constitutional dimensions. *Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 1391, 71 L.Ed.2d 599 (1982).

The termination of parental rights is final and ends all legal ties between the parent and child, except the child's right of inheritance. TEX.FAM.CODE ANN. § 15.07 (Vernon 1986);[1] *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976). It is of greater significance than a denial of custody or managing conservatorship to a parent, because the parties become legal strangers to one another, with neither having a right to visit or see the other.

Because the termination of the parent-child relationship severs rights treasured by the law, strict standards apply; evidence to meet those standards must be clear and convincing. Section 11.15(b) & (c); *In re G.M.*, 596 S.W.2d 846, 846 (Tex.1980). The constitutional dimensions of the relationship require that statutes permitting termination be strictly construed in favor of the parent, and that any effort by the State to terminate it be strictly scrutinized. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985).

Involuntary termination of parental rights is governed by section 15.02. To prevail in such an action, DHS must establish two matters: that the termination is in the best interest of the child and that the parent has violated one or more of the statutory grounds. Section 15.02(1) & (2). In this case, DHS alleged two statutory violations: failure to support for a period of a year and allowing the child to remain in surroundings or conditions which endanger the physical or emotional well-being of the child.

(Vernon 1986) unless otherwise noted.

In the judgment terminating appellant's parental rights, the trial court held that Ybarra had violated § 15.02(1)(D) in that she knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well being. The trial court also held that the termination was in the best interest of the children.

## II. SUFFICIENCY OF THE EVIDENCE AS TO ENDANGERMENT

Points of error one and two complain of the sufficiency of the evidence to support the court's holding that a statutory violation occurred and that termination is in the best interest of the children.

In brief, the facts are that the appellant and her husband, the children's father, separated in 1984. In May 1989, as a result of a complaint about the children's condition, a DHS worker visited the home and found the children, ages ten to two, alone in a squalid house. Caseworkers began contacting and helping the mother to improve her and the children's condition, getting them moved into public housing. The mother was advised not to leave the children alone.

In June 1990, a caseworker again visited the family, this time in public housing, and found the children alone around 7:30 p.m. One case worker went to the mother's job site, a tavern, and returned with her to the home. The children were removed from the home and placed in foster care that night. In July, 1990, DHS was named temporary managing conservator of the children, and that conservatorship was renewed on several occasions. The motion to terminate was filed in January, 1992, and was tried in October of that year. The children have not been in the care of the mother since they were removed from her on June 28, 1990.

A parent who knowingly places or knowingly allows a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child violates § 15.02(1)(D). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the children were removed from Ybar-ra's care, i.e., on or before June 28, 1990. The supreme court defines "endanger" as, "to expose to loss or injury or to jeopardize a child's emotional or physical health." *Texas Dep't of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987). This provision addresses the child's surroundings and environment, rather than parental conduct. *Williams v. Dep't of Human Servs.,* 788 S.W.2d 922, 926 (Tex.App.—Houston [1st Dist.] 1990, no writ).

The Family Code also considers impairment of the child's physical health and emotional development in actions to determine conservatorship under Chapter 14. A parent is the preferred managing conservator and may only be denied custody if there is evidence that the appointment of the parent as custodian would significantly impair the child's physical health or emotional development. Section 14.01. In order to meet that test, there must be evidence of *specific* actions or omissions of the parent that demonstrate that an award of custody to that parent would result in physical or emotional harm to the child. *Lewelling v. Lewelling,* 796 S.W.2d 164, 167 (Tex.1990) (emphasis added). Custody determines who has the legal right to make decisions for the child, who has the privilege of making a home for the child, and who has the responsibility to care for the child. Loss of these rights is significant, but less significant than termination. Termination permanently severs all ties between the parent and child. Because of the higher level of deprivation involved in termination, a similarly stringent test should be applied to termination actions as is applied to loss of managing conservatorship. Accordingly, we will look to *specific* conditions or surroundings and determine whether they endanger the child.

The State must show that the child's living conditions pose a real threat of injury or harm. *Williams,* 788 S.W.2d at 926. The concern in § 15.02(1)(D) is "the *cause* of the resulting danger to the child's physical or emotional well-being." *In re S.H.A.,* 728 S.W.2d 73, 85 (Tex.App.—Dallas 1987, no writ). There must be a connection between the conditions and the resulting

danger to the child's emotional or physical well-being. *Id.*

Evidence of conditions at the Ybarra residence is as follows: In June 1989 Elida Ybarra and her five children were living in substandard housing; there is testimony from two social workers, Ybanez and Garcia, that the roof was open to the sky in the living room. Ybanez stated that the kitchen floor had no floor covering in part, the house was dirty, and the paint was peeling on the kitchen cabinets. The children were alone when Ybanez arrived. In Ybanez' opinion the conditions were dangerous to the physical well-being of the children. Garcia was present the same day. No day-care services were being provided to Ybarra at this time. Ybanez made monthly contacts and home visits with the Ybarra family for six to eight months.

During this time, with help from DHS, the family was moved into public housing and conditions improved. Ybanez testified that there were still problems but did not elaborate on the nature of those problems. On a visit to the family on June 28, 1990, Ybanez testified that the house was fairly clean although there was little food in the house. In contrast, Garcia, the social service technician who was present at the same time, described the house as "inadequately clean." The house did not have enough beds for all the children; the children were sleeping on mattresses placed on the floor and on sofa cushions. The children were alone when Garcia arrived. Ybanez found Ybarra at work at a bar and said she smelled of alcohol. The children were described as hungry and dirty. Only one child was wearing shoes. The younger children were dressed only in their underwear. The eldest boy was wearing only jeans. At this time Ybarra was not receiving child support, food stamps, or day care services. DHS removed the children shortly thereafter.

DHS put on no evidence of the effect on the children of the allegedly endangering conditions. There was no medical or psychological testimony.[2] Latson, another DHS worker, testified about the failure of the

mother to comply with directions given her by DHS workers to apply for food stamps, produce evidence of attendance at Alcoholics Anonymous meetings in Corpus Christi, attend parenting sessions, apply for day care services, and the like. She was of the opinion that termination would be in the best interest of the children.

There was evidence that Mrs. Ybarra had completed an alcohol abuse program, attended A.A. meetings, usually in Beeville, her home, but sometimes in Corpus Christi at the insistence of DHS workers, but she frequently couldn't get an attendance slip after the meetings. Mrs. Ybarra earned about $1,000 per month in the bar where she worked, was probably not eligible for food stamps because of her wages, and she had not been drinking for several years. She was forgetful, had difficulty following instructions, dropped out of school in the ninth grade, and, while in school, had been in the special education program because she was mildly retarded.

The focus of § 15.02(1)(D) is on conditions which endanger the well-being of the child. There is not factually sufficient evidence to conclude by clear and convincing evidence that these children were continuously endangered, that they were endangered on June 28, 1990, or would be endangered if they were returned to Ybarra.

### III. FACTUAL SUFFICIENCY OF BEST INTEREST OF THE CHILD

The fact-finder must consider a number of factors in determining the best interest of the child: the desires of the child; the physical and emotional needs of the child now, and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the persons seeking custody; the programs available to assist those individuals to promote the best interest of the child; the plans for the child by those individuals or by the agency seeking custody; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

---

**2.** A psychological report on Ybarra was referred to in the testimony, but was not introduced into evidence. No reference was made to psychological reports or testing performed on the children.

any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976).

The child's wishes are a factor in determining the best interest of the child. The two eldest children strongly oppose termination of their mother's parental rights, according to Latson. There is no evidence of the desires of the three younger children, ages four, five, and seven. The emotional and physical needs of the children are another factor. Latson testified that the eldest child, Maricella, needs to be able to be a child and Latson fears that she will become a caretaker for Ybarra. Additionally, Latson is concerned that all the children have been in foster care too long, which is, apparently, her basis for concluding that the children's emotional needs will be best served by termination.

Potential danger to the children, either emotional or physical, is another factor to be considered in deciding the best interest of the children. The evidence of this factor consists only of conclusory statements that Ybarra is not a fit parent now and DHS does not expect she will ever be. There is no evidence regarding future danger to the children. Contrary evidence consisted of Ybanez' testimony that Ybarra loved her children and they loved her; housing conditions improved in late 1989 and there is no evidence of dangerous conditions in the home since then. Ybarra's employer testified that she had been to Ybarra's house several times after removal of the children and found it clean. There is no evidence that Ybarra currently has a substance abuse problem; the only evidence is to the contrary.

Whether programs are available to assist the parent is another consideration in the analysis of the best interest of the child. DHS workers testified that the only program available to assist Ybarra is foster care. There was no discussion of the availability of child care assistance or the availability of counseling services to help in the return of the children to Ybarra if her parental rights were not terminated, although these services are apparently available through DHS. There was no evidence of what entitlement programs might be available to assist Ybarra

with the financial burden of raising the children. DHS's plan for the children's future consists of placing the five children, as a group, for adoption.

The appropriateness of the parent-child relationship is another factor in determining the best interest of the child. The only evidence DHS introduced of an inappropriate parent-child relationship was Latson's concern that Ybarra is more like a girlfriend to her eldest daughter than a mother and that the eldest daughter may act as a caretaker towards her mother. No witness testified as to an inappropriate relationship between Ybarra and any of the other children.

Whether there is any excuse for the parent's acts or omissions is important in deciding the best interest of the child. The record reflects that poverty played a role in both the 1989 substandard housing situation and the lack of food and furnishings in 1990. Extreme poverty no longer appears to be a problem, although Ybarra's income of approximately $1000 a month, is inadequate to support six people. There is no evidence that Ybarra was capable of paying for babysitting services during 1989 or 1990; that she had the resources to move from the substandard housing without DHS's assistance, or that she could afford to buy furniture. Ybarra apparently had appropriate housing by the time of trial.

Of the nine elements listed in *Holley*, 544 S.W.2d at 371–72, there is little or no evidence of at least four for the eldest child and little or no evidence of five or more for the remaining children. While there may have been additional information available to the DHS workers which would have supported the conclusion that termination was in best interest of the children, that information does not appear in the record.

Clear and convincing evidence is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Section 11.15(c). When reviewing the decision of the court below in a case requiring proof by clear and convincing evidence, we review the entire record to determine whether the

fact finder could reasonably conclude that the fact was highly probable. *Williams v. Texas Dep't of Human Servs.*, 788 S.W.2d 922, 925 (Tex.App.—Houston [1st Dist.] 1990, no writ); Wendell Hall, *Revisiting Standards of Review in Civil Appeals,* 24 St. Mary's L.J. 1045, 1149–50 (1993). We sustain a challenge to the sufficiency of the evidence "if the fact finder could not have reasonably found that the fact was established by clear and convincing evidence." *Williams,* 788 S.W.2d at 296.

DHS must prove both prongs of § 15.02 by clear and convincing evidence: the statutory violation and the best interest of the child. Section 11.15(b). DHS put on conflicting evidence from its workers; Garcia and Latson testified that termination was in the best interest of the children; Ybanez did not believe termination was best for the children. There was evidence that Ybarra was not drinking, she had stable, full time employment, acceptable housing and understood that the children could not be left alone.[3] The evidence previously recited in this case is not sufficient to support the conclusion that termination is in the best interest of the children by clear and convincing evidence. Points of error one and two are sustained.

## IV. RIGHT TO APPOINTED COUNSEL

▮▮▮▮ By point of error three, Ybarra complains of the trial court's failure to appoint counsel for her. Indigent parents are entitled to appointed counsel in termination proceedings under the terms of the Family Code. Section 11.10(d).[4] The Code does not specify any particular procedure for obtaining counsel under that section. However, the trial court did not err in failing to appoint counsel under these circumstances: Ybarra

did not request appointed counsel and was represented by retained counsel at trial. *Sylvia M. v. Dallas County Child Welfare Unit,* 771 S.W.2d 198, 205 (Tex.App.—Dallas 1989, no writ). Point of error number three is overruled.

The judgment is REVERSED and the cause is REMANDED.

---

3. In a review of other suits to terminate parental rights, far more evidence than was adduced in this case was required to support termination. Additionally, evidence of a causal relationship was shown between the allegedly endangering conditions and a physical or emotional effect on the children. *See Lakes v. Texas Dep't of Human Servs.,* 791 S.W.2d 214, 216 (Tex.App.—Texarkana 1990, no writ); *Jones v. Dallas County Child Welfare Unit,* 761 S.W.2d 103, 105–06 (Tex. App.—Dallas 1988, writ denied); *In the Interest of M.H.,* 745 S.W.2d 424, 429 (Tex.App.—Houston [14th Dist.] 1988, no writ); *E.L.B. v. Texas Dep't Human Services,* 732 S.W.2d 785, 786 (Tex. App.—Corpus Christi 1987, no writ). In con-

trast, cases in which termination proceedings were reversed cited the lack of evidence of causal connection between the allegedly endangering conditions and an effect on the children. *Clark v. Dearen,* 715 S.W.2d 364, 366–67 (Tex.App.— Houston [1st Dist.] 1986, no writ); *Doria v. Texas Dep't of Human Resources,* 747 S.W.2d 953 (Tex. App.—Corpus Christi 1988, no writ).

4. *See also Odoms v. Batts,* 791 S.W.2d 677, 679 (Tex.App.—San Antonio 1990, no writ); *Howell v. Dallas County Child Welfare Unit,* 710 S.W.2d 729, 734 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 505 (1987).