Cooper v. Young 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-271-CV

        CYNTHIA COOPER,
                                                                                       Appellant
        v.

        JIMMY YOUNG,
                                                                                       Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 92-00-01917-AG
                                                                                                    

O P I N I O N
                                                                                                    

          Cynthia Cooper appeals the trial court's judgment terminating her parental rights to her
biological daughter, to whom we will refer as J.K. Through six points of error, Cooper complains
that the trial court erred in failing to sua sponte appoint an attorney ad litem for her at the
termination hearing and the facts adduced at trial were legally and factually insufficient to support
the trial court's judgment. We will sustain her factual sufficiency points and remand the cause to
the trial court for a new hearing.
          To involuntarily terminate a person's parental rights, the trial court must find, first, that
the person committed one of the acts enumerated in Tex. Fam. Code Ann. § 15.02(a)(1),


 and
second, that termination is in the best interest of the child. Id. § 15.02(a)(1)-(2); Richardson v.
Green, 677 S.W.2d 497, 499 (Tex. 1984). The party seeking to terminate must prove his case
by "clear and convincing evidence." Act of June 14, 1983, 68th Leg., R.S., ch. 298, § 2, 1983
Tex. Gen. Laws 1554, 55 (now codified at Tex. Fam. Code Ann. § 161.001 (Vernon 1996)); In
re G.M., 596 S.W.2d 846, 847 (Tex. 1980). Clear and convincing evidence means the measure
or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as
to the truth of the allegations sought to be established. Act of June 14, 1983, 68th Leg., R.S., ch.
298, § 2, 1983 Tex. Gen. Laws 1554, 55 (now codified at Tex. Fam. Code Ann. § 101.007
(Vernon 1996)); In re G.M., 596 S.W.2d at 847.
          The following is the complete list of Cooper's section 15.02(a)(1) violations made by the
trial court. The court found that Cooper:
[1] voluntarily left [J.K.] alone or in the possession of another not the parent and
expressed an intent not to return;
 
[2] voluntarily left [J.K.] alone or in the possession of another not the parent
without expressing an intent to return, without providing for the adequate support
of [J.K.], and remained away for a period of at least three months;
 
[3] knowingly placed or knowingly allowed [J.K.] to remain in conditions or
surroundings that endanger the physical or emotional well-being of [J.K.];
 
[4] engaged in conduct or knowingly placed [J.K.] with persons who engaged in
conduct that endanger[ed] the physical or emotional well-being of [J.K.; and]
 
[5] failed to support [J.K.] in accordance with her ability during a period of one
year, ending within six months of the filing of the petition in this cause.

The court's findings tracked the language of subsections (A), (B), (D), (E), and (F) of section
15.02(a)(1) of the old Family Code, respectively.
          In reviewing legal and factual sufficiency points in a termination of parental rights case,
we use the same standards of review used in other civil cases. In re J.J., 911 S.W.2d 437, 439-40
(Tex. App.—Texarkana 1995, writ denied); Doria v. Texas Dept. of Human Resources, 747
S.W.2d 953, 955 (Tex. App.—Corpus Christi 1988, no writ). Accordingly, in considering a "no
evidence" point, we will consider only the evidence and inferences tending to support the finding
of the trier of fact and disregard all evidence and inferences to the contrary. Burroughs Wellcome
Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). We will uphold the finding if more than a
scintilla of evidence supports it. Id.; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661
(1951). The evidence supporting a finding amounts to more than a scintilla if reasonable minds
could arrive at the finding given the facts proved in the particular case. See Crye, 907 S.W.2d
at 499.
          In considering a challenge to the factual sufficiency of the evidence, we examine all of the
evidence in the record and set aside the judgment only if it is so contrary to the great weight and
preponderance of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986); In re King's Estate, 150 Tex. 662, 244 S.W.2d at 661. The clear and
convincing standard of proof required at the trial court level to terminate parental rights does not
alter the standards of review on sufficiency of the evidence claims. In re J.J., 911 S.W.2d at 439.
          At the hearing held on May 4, 1995, the following facts were adduced from Jimmy
Young's testimony: Young is the biological father of J.K. and he filed the petition to terminate
Cooper's parental rights. He was awarded managing conservatorship of J.K. on February 17,
1994, and has been taking care of her since then.


 He obtained control of J.K., who was four
years old at the time of the hearing, when Cooper dropped her off with him, along with Cooper's
son of whom Young was not the father, approximately six weeks or less before the date he was
awarded managing conservatorship. There was a period of six months during that time Young had
possession of J.K. that Cooper did not contact J.K. in any way. J.K. has emotional and behavioral
problems. She has bad dreams, becomes frightened if left alone, and occasionally fondles herself. 
Approximately two or three months prior to the hearing, Cooper arrived at Young's house and
created a disturbance that upset J.K., causing her to be nervous and to shake. Cooper has not
provided J.K. with any financial support since she left her with Young. An acquaintance of
Young's told him that, approximately four years earlier, when J.K. was an infant, Cooper threw
her down at a party so that she could fight her male companion. Young also offered his opinion
that he does not believe Cooper is responsible enough to raise a child.
          The following facts were provided by Cooper: Within the past year, and after she left J.K.
with Young, she was arrested for and was convicted of misdemeanor marijuana possession and
was given a probated sentence, which she successfully completed. She works as a dancer at a
strip-bar earning approximately $500 per week, a job she took to get off welfare. She is willing
to pay 20% of her salary in child support, although she would prefer to have that amount lowered. 
At the time of the hearing, Cooper was sharing a three-bedroom house with two other men. She
brought J.K. to Young approximately two and a half years before the date of the hearing because
she was having problems with depression and suicidal inclinations. On two occasions she tried
to kill herself, the last attempt being the previous summer, but Cooper stated that she was no
longer suicidal and was no longer using drugs. For an unstated reason, Cooper also lost
possession of her son that she left with Young along with J.K. Cooper admitted that there was a
period of six months when she had no contact with J.K., but that was because of her depression
and consequent inability to function adequately. Cooper also stated that she does not want custody
of J.K., only to be able to visit her and pay child support. Cooper testified further that, when J.K.
was six months old, Young was convicted of driving while intoxicated and served time in jail for
it. She added that she and Young "broke up" because he was abusive.
          The following testimony was offered at the hearing by Cooper's sister, Lindy Hobdy:
Cooper tried her best to raise J.K. before bringing her to Young, but was unable to continue to
care for her because of her depression. Cooper appears to look healthier than she did five months
earlier. Hobdy testified that she would be leery of leaving her own children with Cooper alone,
but she would allow it if there was someone else present to supervise the visitation.
          On appeal, Cooper contends that the evidence was legally and factually insufficient to
support the court's findings. With respect to the first finding, she alleges that there was no
evidence elicited that she never intended to return to J.K. after leaving her with Young. 
Concerning findings one and two, the evidence was conclusive that when Cooper left J.K. with
Young, she knew that he was J.K.'s father. Regarding findings three and four, there was no direct
evidence from the hearing that Cooper ever placed J.K. in dangerous surroundings and that,
assuming that J.K. is now suffering some emotional trauma, that Cooper caused it. And relating
to the fifth finding, she asserts that she provided J.K. with support by leaving her with her father.
          With regard to the trial court's first and second findings, Young, himself, testified that he
was J.K.'s father. Therefore, the trial could not have relied upon either finding in concluding
under section 15.02(a)(1) that Cooper's parental rights should be involuntarily terminated.
          Concerning finding five, there was no evidence that Cooper for a period of one year failed
to provide support for J.K. The record shows that Cooper left J.K. with Young only six weeks
or less before Young was granted managing conservatorship of J.K. In the order granting Young
managing conservatorship, the trial court expressly did not require Cooper to pay any child
support for J.K. Therefore, the only time in which Cooper could be considered to have failed to
provide financial support for J.K. is between the date she left J.K. with Young and the date he was
granted managing conservatorship. This period of time was less than a year. Therefore, there
was no evidence to support the trial court's fifth finding.
          Considering the trial court's third finding, we conclude that the evidence, while legally
sufficient to support the finding, was factually insufficient to support it. Cooper testified that
Young was abusive and that he was convicted of driving while intoxicated when J.K. was around
six months old. This is more than a scintilla of evidence to support the trial court's third finding.
          On the other hand, the evidence was factually insufficient to support the finding. The trial
court, in terminating Cooper's parental rights, was willing to allow J.K. to remain in Young's
custody, which indicates that the court did not believe that Young imposed any significant danger
to J.K. Further, there was no evidence that Young was ever abusive to J.K. or to his other child,
a boy fifteen years old at the time of the hearing. Considering all the evidence at the hearing, we
conclude that the trial court's third finding was so against the great weight and preponderance of
the evidence as to be manifestly wrong and unjust.
          In addressing the trial court's fourth finding, we similarly conclude that there was more
than a scintilla of evidence that Cooper engaged in conduct that endangered J.K.'s physical or
emotional well-being. There was evidence that Cooper had been convicted of marijuana
possession, lives with two men, dances at a strip-bar, has attempted suicide at least twice, lost
possession of another child, threw down J.K. as an infant so she could fight with a male
companion, did not contact J.K. for an extended period of time after leaving her with Young, and
that J.K. has emotional and behavioral problems of an unknown origin. Each one of these facts
provides more than a scintilla of evidence to support the trial court's fourth finding.
          But we fail to conclude that the evidence adduced at the termination hearing was factually
sufficient to support the fourth finding. There was evidence that Cooper is now gainfully
employed (the other side of the strip-dancing coin), no longer uses drugs, no longer is depressed
or has suicidal thoughts, and was concerned enough about J.K.'s well-being while she was
suffering from depression to leave her with Young whom she believed could provide for J.K. 
While there was evidence that J.K. at the time of the hearing was having emotional and behavioral
problems, there was no evidence to show that Cooper caused the problems. Young surmises that
Cooper's employment as a strip-dancer and her domestic accommodations with two men suggest
that Cooper had allowed J.K. to be sexually assaulted, but this evidence is extremely speculative. 
Furthermore, other than the hearsay testimony that Cooper threw down J.K. at a party, there was
no additional evidence that Cooper ever hurt J.K. in any other way, either physically or
emotionally. See In re P.S., 766 S.W.2d 833, 839 (Tex. App.—Houston [1st Dist.] 1989, no
writ).
          The decision to terminate should not be made lightly. Rights which inhere in the parent-child relationship are of constitutional dimension, Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct.
1208, 1212 (1972); In re G.M., 596 S.W.2d 846, and the decision to terminate is complete, final,
and irrevocable. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Interference with the parent-child relationship is justified only when there is a compelling governmental interest; consequently,
a trial court's decision to terminate will be strictly scrutinized on appeal. Id. While there was
substantial evidence that Cooper has not been a model mother for J.K., the evidence nevertheless
fails to justify a decision to completely and permanently sever Cooper's relationship with her
daughter. We conclude that the evidence adduced at the termination hearing was factually
insufficient to support the trial court's fourth finding.
          We conclude that the evidence was factually insufficient to support the trial court's
judgment. Due to our disposition of Cooper's sufficiency points, we need not consider her
complaint about the trial court's failure to appoint her an attorney ad litem for the termination
hearing. The judgment is reversed and the cause remanded for a new termination hearing.


                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Justice Cummings,
          Justice Vance,
          and Chief Justice McDonald (Retired)
Reversed and remanded
Opinion delivered and filed September 18, 1996
Do not publish