In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-117 CV


____________________



In the Interest of K.F., a/k/a K.L.D., a child







On Appeal from the 279th District Court


Jefferson County, Texas


Trial Cause No. F-177,083-B






OPINION


 Paige Leigh Daniels Folsom appeals the termination of her parental rights to her
daughter, K.F., who is also known as K.L.D. Folsom complains that the evidence
presented was legally and factually insufficient to support any of the three statutory
grounds found by the trial court to support the termination petition filed by the Texas
Department of Protective and Regulatory Services, and that the evidence was legally and
factually insufficient to support the finding that the termination was in the best interest of
the child. We will address the nine points of error in the groups presented in the
appellant's brief. 

 Both the statutory grounds for termination and the child's best interest must be
proven by clear and convincing evidence in the trial court. Tex. Fam. Code Ann. §
161.001 (Vernon Supp. 2002). "[T]he appellate standard for reviewing termination
findings is whether the evidence is such that a factfinder could reasonably form a firm
belief or conviction about the truth of the State's allegations." In the Interest of C.H., No.
00-0552, 45 Tex. Sup. Ct. J. 1000, 2001 WL 1903109, at *8 (July 3, 2002).

 Folsom's first four points of error challenge the trial court's findings under Tex.
Fam. Code Ann. § 161.001(1)(D), (E) (Vernon Supp. 2002), as follows: 

 Point of error one: The trial court erred in terminating the parent-child relationship in that there is no evidence or, in the alternative, the
evidence is legally insufficient to clearly and convincingly support a finding
that appellant knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endangered the physical or emotional well-being of the child.


 Point of error two: The trial court erred in terminating the parent-child relationship in that the evidence is factually insufficient to clearly and
convincingly support a finding that appellant knowingly placed or knowingly
allowed the child to remain in conditions or surroundings which endangered
the physical or emotional well-being of the child.


 Point of error three: The trial court erred in terminating the parent-child relationship in that there is no evidence or, in the alternative, the
evidence is legally insufficient to clearly and convincingly support a finding
that appellant engaged in conduct or knowingly placed the child with persons
who engaged in conduct which endangered the physical or emotional well-being of the child.


 Point of error four: The trial court erred in terminating the parent-child relationship in that the evidence is factually insufficient to clearly and
convincingly support a finding that appellant engaged in conduct or
knowingly placed the child with persons who engaged in conduct which
endangered the physical or emotional well-being of the child.


 The appellant argues that the two findings are not supported by the evidence that she
left her three-year-old child alone on one occasion, while she obtained medication for the
child. 

 The factfinder was presented with a less sanitized version of events. The police
contacted the investigator for the Department about 9:00 p.m. A child was trapped in a
house. Burglar bars on the doors and windows prevented the police and firemen from
gaining entry until the owners arrived about forty-five minutes after the investigator
arrived at the scene. The door to the room housing the child had been pulled closed and
secured with an electrical cord. The three-year-old child, K.F., and a small dog were
inside the room. An old mattress and box spring lay on the floor; the box spring had been
turned over, and its springs were exposed. The floor was literally covered with feces, both
old and fresh. The dog bit the investigator. The investigator thought the room was the
child's bedroom, because there was no other room in the house that could have been hers. 

 Except for the master bedroom, the rest of the house was also in an unsanitary
condition. An ice chest on the kitchen floor contained hundreds of dead maggots. The
stench of urine and feces filled the house. There was a pile of urine-soaked laundry in the
laundry room. Dangerous items were found in the home. An M-16 rifle was recovered
from an unlocked closet in the master bathroom. A loaded handgun was on top of the
refrigerator. A sheathed knife with a four or five inch blade was found on the living room
floor. On the living room fireplace mantle, bottles of lighter fluid were next to the canister
of baby wipes. 

 Folsom claimed that she had left for fifteen minutes to purchase Tylenol for K.F.
at a local store. The investigator did not see any medicine, however, and K.F. did not
appear to be sick. Paige Folsom and her husband Gene were charged with child
endangerment as a result of the incident. At the time of trial, they were both on probation
for the offense. 

 Folsom offered rebuttal testimony to significant portions of the Department's
evidence. Folsom testified that K.F. does not sleep in the room where the police found
her. She and Gene put K.F. in the room because they did not want to take her out in the
night air. Gene accompanied Folsom to the store because she could not write checks on
his account. He did not go alone because she is the one who gives medication. 

 Folsom denied that the photographs and testimony accurately portrayed the
condition of the home. She denied that the ice chest came from her home. She also denied
that the knife on the floor came from her house. She also claimed that one gun was under
some clothes on the top shelf of the closet, and there was no gun on the refrigerator. The Department's caseworker testified that the Folsoms refused to allow her inside
when she attempted to conduct home visits. Folsom recalled talking to the caseworker out
in the yard, but did not recall refusing to allow her indoors. Gene denied having refused
to allow the caseworker in the house. 

 The appellant argues that the statutory grounds for termination under Section
161.001(1)(D) and (E) cannot be established by a single incident when she left the child
unattended. In support of this argument, she cites three cases: Ybarra v. Texas Dep't of
Human Servs., 869 S.W.2d 574 (Tex. App.--Corpus Christi 1993, no writ); Doria v.
Texas Dep't of Human Resources, 747 S.W.2d 953 (Tex. App.--Corpus Christi 1988, no
writ); and Villarreal v. Villarreal, 684 S.W.2d 214 (Tex. App.--Corpus Christi 1984, no
writ). Villarreal was a child custody case, not a termination proceeding brought by a state
agency, and involved an issue of changed circumstances, not endangerment. Villarreal,
684 S.W.2d at 219. In Doria, the mother left her two toddlers unattended on one
occasion, the circumstances of which were not described in the opinion. Doria, 747
S.W.2d at 958. That event, plus living in conditions of poverty that had improved before
trial, was insufficient to meet a "clear and convincing" burden of proof of endangerment. 
Id. at 959. Ybarra involved children from ages ten to two, who lived in poverty and were
found alone on the day the department intervened. Ybarra, 869 S.W.2d at 577-78. Their
living conditions improved before termination was sought. Id. at 578-79. The isolated
incidents and impoverished conditions involved in Ybarra and Doria did not support a
finding of endangerment. In a more recent case, In re M.C., 917 S.W.2d 268, 269 (Tex.
1996), the parent briefly left the young children alone in potentially dangerous situations
on two occasions. Once, the children wandered outside onto the highway, and another
time they were left alone in a running vehicle. Id. at 269-70. Also, the children lived in
unsanitary conditions. Id. at 270. The Supreme Court held that the Department presented
legally sufficient evidence to support the trial court's judgment of termination and
remanded the case to the court of appeals to address appellant's other points of error. Id.
at 269-70. 

 For more than forty-five minutes, Folsom left her three-year-old child with a dog;
the child was barred from rescue in a physically hazardous and extraordinarily unsanitary
room. Here, the facts are far more egregious than those in Ybarra and Doria, where the
children were briefly left unattended under apparently benign circumstances that were
corrected after intervention, but somewhat less egregious than in M.C., where the children
were wandering onto the highway and driving the family car into a building. As in M.C.,
the evidence showed an unsanitary environment. Unlike Doria and Ybarra, there is no
evidence of improved living conditions in this case. Although the appellant challenged the
Department's account of the severity of the incident involved and the condition of the
home, the weight and credibility of the controverted testimony were for the jury to decide. 
Because a reasonable finder of fact could form a firm belief or conviction that grounds
exist for termination under subsections D and E of Section 161.001(1), points of error one
through four are overruled.

 Folsom's points of error five, six, and seven challenge the trial court's findings
under Section 161.001(1)(O) (Vernon Supp. 2002).

 A finding on any one ground, coupled with a finding that termination is in the best
interest of the child, is sufficient to terminate parental rights. Edwards v. Texas Dep't of
Protective and Regulatory Servs., 946 S.W.2d 130, 134 (Tex. App.--El Paso 1997, no
writ). The trial court's ruling will be affirmed so long as there is evidence sufficient to
support termination on any one of the grounds found under Section 161.001(1) so long as
there is a finding that termination is in the best interest of the child. Id. As we have found
sufficient evidence to support the findings under Section 161.001(1)(D) and (E), we need
not address points of error five through seven. 

 Folsom's final two points of error challenge the trial court's findings under Section
161.001(2) (Vernon Supp. 2002), as follows: 

 Point of error eight: The trial court erred in terminating the parent-child relationship in that there is no evidence or, in the alternative, the
evidence is legally insufficient to clearly and convincingly support a finding
that termination of the parent-child relationship between appellant and the
child is in the child's best interest.


 Point of error nine: The trial court erred in terminating the parent-child relationship in that the evidence is fac[tu]ally insufficient to clearly and
convincingly support a finding that termination of the parent-child
relationship between appellant and the child is in the child's best interest. 


 Among the factors considered in ascertaining the best interest of the child are the
following: 1) the desires of the child; 2) the emotional and physical needs of the child now
and in the future; 3) the emotional and physical danger to the child now and in the future;
4) the parental abilities of the individuals seeking custody; 5) the programs available to
assist these individuals to promote the best interest of the child; 6) the plans for the child
by these individuals or by the agency seeking custody; 7) the stability of the home or
proposed placement; 8) the acts or omissions of the parent which may indicate that the
existing parent-child relationship is not a proper one; and 9) any excuse for the acts or
omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). 

 The evidence described in our discussion of the first four points of error supports
the Department's argument that termination is in K.F.'s best interest because of emotional
and physical danger to the child now and in the future. In addition, Folsom and her
husband failed to cooperate with the Department or to take advantage of the assistance the
Department provided. The Department caseworker testified that the child was not returned
to Folsom because the service plan had not been completed. The Folsoms refused to let
the worker in their home. After attending two sessions, the Folsoms failed to complete
family counseling. The plan required Folsom to show that she was employed, and,
although she claimed to earn nine hundred dollars each week caring for Gene Folsom's
invalid father, Folsom failed to produce pay stubs to demonstrate employment. At trial,
Folsom testified that she and her husband both take care of his father from 10:30 to 5:00
for a collective nine hundred dollars a week. In March 2001, the child's permanency plan
changed from reunification to termination because the Department was approaching its one
year deadline without successful completion of the service plan. 

 A clinical psychologist who performed a psychological evaluation of Paige Folsom
found the appellant to be suffering from a dependant personality disorder. In terms of her
taking care of the child, she would depend upon her husband to assist in taking care of
K.F. Determining that appellant needed counseling to help her make independent
decisions without looking to other adults for direction, the psychologist scheduled some
appointments for Folsom. She never appeared for her appointments. The psychologist also
evaluated Gene Folsom, because he was a member of K.F.'s household, and found him
to be suffering from major depressive disorder and substance abuse. 

 Folsom claimed that she refused to cooperate with the Department because she was
protecting her constitutional rights. Folsom testified that she completed the first three
plans, but the Department kept giving her new plans with more requirements. The
caseworker testified that the plan is revised every four months to allow for incremental
progress and to set new goals. 

 The child's CASA guardian ad litem expressed the opinion that it would be in the
child's best interest to terminate the parent-child relationship. She made regular visits to
K.F.'s foster home, and visited her school, day care, and counselor, but had little contact
with the appellant because Folsom and her husband were very reluctant to visit with her. 
When she first observed K.F., the child was very reserved, withdrawn, and frail, with thin
hair and peeling nails. Although the child still gets frustrated at times, she became very
outgoing over the course of the eighteen months that she had been in foster care. The
Department was investigating three possible relative placements for K.F. at the time of
trial. 

 The dangerous and unsanitary conditions in which Folsom left her child
demonstrated a lack of parenting ability unremedied in the ensuing months. We hold that
a reasonable finder of fact could form a firm belief or conviction that termination of Paige
Folsom's parental rights is in K.F.'s best interest. Points of error eight and nine are
overruled. The judgment is affirmed.

 AFFIRMED.


 PER CURIAM


Submitted on July 11, 2002

Opinion Delivered August 15, 2002

Do Not Publish 


Before Walker, C.J., Burgess and Gaultney, JJ.