NO. 07-10-0458-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 6, 2012

_____

IN RE I.G.H., A MINOR CHILD

_____

FROM COUNTY COURT AT LAW NO. 2 OF RANDALL COUNTY;

NO. 7329-L2; HONORABLE RONNIE WALKER, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, B.J.H.,[1] appeals the trial court's order terminating his parental rights to

his daughter, I.G.H.[2]  By two issues, he maintains the trial court erred in finding that (1)

he knowingly placed or knowingly allowed I.G.H. to remain in conditions or surroundings

which endangered her physical or emotional well-being and (2) he engaged in conduct

---

[1]To protect the parent's and child's privacy, we refer to Appellant and other parties by their initials.  *See* Tex. Fam. Code Ann. §109.002(d) (West 2008).  *See also* Tex. R. App. P. 9.8(b).

[2]As originally filed, the Department also sought termination of the parental rights of A.B.H., I.G.H.'s mother.  Pursuant to an affidavit of voluntary relinquishment of parental rights signed during trial, the trial court's order also terminated A.B.H.'s parental rights.  A.B.H. does not appeal.

or knowingly placed I.G.H. with persons who engaged in conduct which endangered her physical or emotional well-being.  We affirm.

## BACKGROUND FACTS

I.G.H. was born on August 11, 2008, to B.J.H. and A.B.H.  At that time, I.G.H., A.B.H., and B.J.H. resided in the home of A.B.H.'s mother.  In addition to her mother, A.B.H.'s grandmother and her older daughter, L.N.C., also lived at that residence.  A.B.H.'s mother was the children's primary caregiver.  In November 2008, B.J.H. moved out amid allegations of domestic violence between himself and A.B.H.  He was, however, permitted to visit his daughter and stepdaughter.

A.B.H. began using drugs when she was eleven years old[3] and according to her own admission, was using drugs in 2009.  In June 2009, she was suspected of forging checks on relatives' checking accounts and law enforcement commenced an investigation.  A search warrant was obtained, and on June 10, 2009, the Canyon Police Department conducted a raid at the residence.  An investigator for the Department of Family and Protective Services was notified because of the presence of children.  Following the raid, the children were removed and immediately placed with A.B.H.'s uncle.

A.B.H. was charged with child endangerment, possession of methamphetamines and forgery.  Pursuant to a plea agreement, she was granted deferred adjudication and placed on community supervision.  At the time of the raid and removal of the children,

---

[3]A.B.H. was in her early twenties at the time of the hearing.

B.J.H. was serving a twenty-two month sentence for evading detention. His sentence was originally imposed in April 2009, and his release was scheduled for February 2011.

According to the investigator's testimony, at the time of the raid, the home was in disarray, had large black trash bags and debris scattered throughout and presented a hazardous environment for young children. Additionally, the discovery of drugs and drug paraphernalia gave the Department cause to be concerned about the well-being of the children. Consequently, the Department initiated this termination proceeding two days after the raid.

Following a trial before the bench and testimony from numerous witnesses, the trial court announced its ruling terminating the parental rights of both B.J.H and A.B.H. Findings of fact and conclusions of law were entered in support of the order. B.J.H. is the sole party appealing the termination order. In this appeal, he challenges both the legal and factual sufficiency of the evidence supporting that order.[4]

### INVOLUNTARY TERMINATION OF PARENT-CHILD RELATIONSHIP

Section 161.001 of the Texas Family Code permits a court to order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of the statute and also proves that termination of the parent-child relationship is in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2011); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Though the

---

[4]B.J.H. timely filed a Statement of Points challenging the sufficiency of the evidence and other issues ultimately not raised in his brief. Effective September 1, 2011, section 263.405(b) of the Texas Family Code, which required a timely filed Statement of Points to preserve issues for appellate review, was repealed. *See* Act of May 5, 2011, 82nd Leg., R.S., ch. 75, 2011 Tex. Sess. Law Serv. 348, 349.

same evidence may be probative of both issues, both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *Holley*, 544 S.W.2d at 370. Therefore, we will affirm the termination order if the evidence sufficiently establishes any statutory ground upon which the trial court relied in terminating parental rights as well as the best interest finding. *See In re S.F.*, 32 S.W.3d 318, 320 (Tex.App.–San Antonio 2000, no pet.).

### § 161.001(1)(D) - DANGEROUS CONDITIONS OR SURROUNDINGS

Under section 161.001(1)(D), parental rights may be terminated when clear and convincing evidence shows that a parent knowingly placed or knowingly allowed a child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. In our analysis, we must examine the time before the child's removal to determine whether the environment itself posed a danger to the child's physical or emotional well-being. *Ybarra v. Tex. Dept of Human Services*, 869 S.W.2d 574, 577 (Tex.App.--Corpus Christi 1993, no writ). Although the focus of subsection (D) is on the child's living environment and not on the parent's conduct, parental conduct may produce an endangering "environment." *See In re D.T.*, 34 S.W.3d 625, 633 (Tex.App.–Fort Worth 2000, pet. denied). *See also Matter of B.R.*, 822 S.W.2d 103, 105-06 (Tex.App.–Tyler 1991, writ denied) (citing *In Interest of L.S.*, 748 S.W.2d 571 (Tex.App.–Amarillo 1988, no writ)). Subsection (D) requires a showing that the environment in which the child is placed poses a threat to the child's physical or emotional health. *Doyle v. Texas Dept of Pro. and Reg. Serv.*, 16 S.W.3d 390, 395

4

(Tex.App.--El Paso 2000, pet. denied). Additionally, subsection (D) permits termination of parental rights based on a single act or omission by the parent. *In re L.C.*, 145 S.W.3d 790, 796 (Tex.App.–Texarkana 2004, no pet.).

## § 161.001(1)(E) - DANGEROUS CONDUCT

Under section 161.001(1)(E), parental rights may be terminated when clear and convincing evidence shows that a parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. The cause of the danger to the child must be the conduct in question, as evidenced not only by the parent's actions but also by his or her omission or failure to act. *Doyle*, 16 S.W.3d at 395. Additionally, subsection (E) requires more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" by the parent is required. *In re D.T.,* 34 S.W.3d at 634. "Endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment; it means actual exposure to loss or injury. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996), (citing *Texas Dept. of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). *See also In re T.N.*, 180 S.W.3d 376, 383 (Tex.App.–Amarillo 2003, no pet.).

Parental knowledge that actual endangering conduct has occurred is not necessary; it is sufficient that the parent was aware of the potential for danger and disregarded the risk. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex.App.--Houston [14th Dist. 2005, no pet.). Furthermore, the child need not suffer actual injury and the parent's

5

conduct need not be directed at the particular child in question. *In re M.C.T.*, 250 S.W.3d 161, 169 (Tex.App.--Fort Worth 2008, no pet.).

The law does not require that a child be a victim of abusive conduct before the Department can involuntarily terminate a parent's rights to that child. *In re C.J.F.*, 134 S.W.3d 343, 352 (Tex.App.--Amarillo 2003, no pet.). "Rather, if the evidence shows a course of conduct which has the effect of endangering the emotional well-being of the child, a finding under section 161.001(1)(E) is supportable." *Id.*

## § 161.001(2) - BEST INTEREST[5]

Notwithstanding the sufficiency of the evidence to support termination under section 161.001(1), the reviewing court must also find clear and convincing evidence that termination of the parent-child relationship was in the child's best interest. *See* § 161.001(2). In deciding best interest, we consider numerous factors. *See* § 263.307(b). The Supreme Court has considered the following factors: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. These factors are not exhaustive; some listed factors may be

---

[5]Although B.J.H. does not present an issue challenging the trial court's best interest finding, we nevertheless review the finding as a necessary element for termination of his parental rights.

inapplicable to some cases, while other factors not on the list may also be considered when appropriate. *In re C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id.* Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See id.* at 28. In any case, there must be evidence from which a factfinder could reasonably have formed a firm conviction or belief that the child's best interest warranted termination. *In re D.S.A.*, 113 S.W.3d 567, 574 (Tex.App.--Amarillo 2003, no pet.).

## STANDARD OF REVIEW IN TERMINATION CASES

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly scrutinized. *In Interest of G.M.*, 596 S.W.2d 846 (Tex. 1980). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d at 26.

A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers that exist between a child and his or her parent other than the child's right to inherit. *Holick*, 685 S.W.2d at

20. Thus, due process requires application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* Tex. Fam. Code Ann. § 101.007 (West 2008). *See also In re C.H.,* 89 S.W.3d at 25-26.

In a legal sufficiency review of the evidence to support an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *See* Tex. Fam. Code Ann. § 101.007 (West 2008); *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.F.C.*, 96 S.W.3d at 266. Thus, we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

The standard for reviewing the factual sufficiency of termination findings is whether the evidence is such that a reasonable factfinder could form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W.3d at 25-26. Under that standard, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its

finding. *In re J.F.C.,* 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## ANALYSIS

Here, the trial court found that termination of B.J.H.'s parental rights to I.G.H. was in her best interest. The trial court also found that he:

(1)     knowingly placed or knowingly allowed I.G.H. to remain in conditions or surroundings which endangered her physical or emotional well-being; and

(2)     engaged in conduct or knowingly placed I.G.H. with persons who engaged in conduct which endangered her physical or emotional well-being.

Tex. Fam. Code Ann. § 161.001(1)(D) and (E) (West Supp. 2011).

Under subparagraph (D), the focus is on the child's living environment. From her birth in August 2008 until June 2009, when she was removed from the home following the raid, I.G.H. was living with her mother and half-sister in her grandmother's home.

A.B.H.'s uncle, who temporarily kept the children after their removal, testified that A.B.H. and her children were living in filth and trash. He added that trash bags would pile up for weeks in the kitchen and living room and that the bottoms of L.N.C.'s feet were black from the filth. The Department investigator testified that at the time of the raid, officers discovered controlled substances and drug paraphernalia as well as large

9

trash bags and debris scattered throughout. Although I.G.H. was too young to be mobile, drugs found in a bathroom were within reach of her older half-sister, L.N.C. As a result of the raid, one of the charges brought against A.B.H. was endangering a child, to which she pleaded guilty and was granted deferred adjudication and placed on community supervision for five years.

Other than the time he briefly lived in the residence, the Department did not provide any evidence demonstrating B.J.H.'s knowledge of the conditions of the home after he moved out in November 2008. Instead, through vigorous cross-examination of witnesses, B.J.H. was able to show that he did not live in the house at the time of the raid, was not connected to the drugs found nor to the forgeries tied to A.B.H. and had no input regarding I.G.H.'s living conditions while she was in the care of her mother and grandmother.

B.J.H. did express concern for I.G.H. in November 2008, not so much because of I.G.H.'s living environment, but because he discovered that A.B.H. was breast feeding I.G.H. while abusing methamphetamines. B.J.H. threatened to leave A.B.H. if she did not get clean and attempted to remove I.G.H. from the home. According to his testimony, he contacted the Department and also called the Canyon Police Department to report A.B.H.'s drug abuse. At one point, he was in the process of placing a car seat in his vehicle in an attempt to remove I.G.H. from that environment when A.B.H.'s mother accused him of stealing the car seat. At that time, his efforts to take I.G.H were thwarted by Canyon Police Officers and A.B.H. According to the Department's caseworker, B.J.H.'s call to report A.B.H.'s drug abuse was characterized as a domestic

10

violence call. B.J.H., however, explained that his argument with A.B.H. was the result of her conduct, i.e., breast feeding his four-month-old daughter while abusing methamphetamines.[6]

Viewed in the light most favorable to the termination finding, we conclude that this evidence is legally sufficient to support termination under section 161.001(1)(D). However, given the heightened standard of review in termination cases, in conducting a factual sufficiency review, we find the Department failed to establish by clear and convincing evidence that B.J.H. knowingly placed or knowingly allowed I.G.H. to remain in conditions or surroundings which endangered her physical or emotional well-being. Therefore, issue one is sustained.

We begin our analysis of issue two by noting that although a substantial portion of the testimony and evidence presented during trial focused on A.B.H.'s conduct, the Department did present evidence that B.J.H. engaged in conduct not befitting a parent as well. The Department presented evidence of B.J.H.'s criminal history from two prosecutors. His pen packet included a 2002 conviction for resisting arrest, a 2003 conviction for assault causing bodily injury, a 2003 conviction for theft by check, a 2005 conviction for evading arrest with a vehicle and a 2009 conviction for evading detention. While imprisonment, standing alone, is not a basis for termination of parental rights, *Texas Dept. of Human Services v. Boyd*, 727 S.W.2d 531, 533-54 (Tex. 1987), it is an appropriate factor to consider. *Id.*

---

[6]B.J.H. was eventually charged with felony assault. That case was dismissed, however, pursuant to a plea bargain agreement wherein B.J.H. agreed to plead guilty to evading detention in exchange for a recommendation of twenty-two months confinement.

11

In 2007, prior to I.G.H.'s birth, the Department previously investigated B.J.H. for drug use[7] and domestic violence against his stepdaughter, L.N.C. The case, however, was closed after A.B.H.'s grandmother agreed to protect L.N.C. In 2008, the Department had two intakes on B.J.H., one for neglectful supervision and one for physical abuse. Both were ruled as RTBs (reason to believe), however, no further action was taken.

A counselor who evaluated L.N.C. testified that L.N.C. observed domestic violence between her mother and B.J.H. She also testified that L.N.C. disclosed that B.J.H. once grabbed her by the arm, strangled her around the neck and spanked her excessively with a wooden paddle. L.N.C. was also evaluated by a psychologist who likewise testified that L.N.C. claimed B.J.H. hurt her arm and threw her on the bed.[8] During his testimony, B.J.H. denied harming L.N.C., but admitted incidents of domestic violence in his relationship with A.B.H. Contrary to the Department's witnesses, B.J.H. testified that domestic violence did not occur in the presence of the children.

In support of his case, B.J.H. testified that he worked regularly to provide for his family and tried to interact with his daughter and stepdaughter. During his incarceration, he completed parenting, religious, life skills and anger management classes and he attempted to comply with as many of the Department's family based services as

---

[7]After I.G.H.'s birth in 2008, there is nothing in the record to indicate drug use by B.J.H. The Department never asked him to submit to testing and he tested negative while incarcerated.

[8]According to L.N.C.'s grandmother, B.J.H. grabbed L.N.C. when she stepped in during an argument with A.B.H.

12

possible. He expressed his intent to complete services upon his release, including a batterer's prevention program, which was not available to him while incarcerated.

B.J.H.'s good intentions notwithstanding, the evidence demonstrated a voluntary, deliberate and conscious "course of conduct" of physical abuse and anger toward A.B.H. and L.N.C. which could impact the well-being of I.G.H. Abuse does not need to be directed at the child in question to support a finding of endangerment. *See In re W.J.H.*, 111 S.W.3d 707, 716 (Tex.App.--Fort Worth 2003, pet. denied). *See also In re C.J.O.*, 325 S.W.3d 261, 265 (Tex.App.--Eastland 2010, pet. denied) (holding that domestic violence may be considered evidence of endangerment under section 161.001(1)(E)). Additionally, B.J.H.'s propensity to commit crimes that could subject him to incarceration could negatively impact I.G.H. by subjecting her to a life of uncertainty and instability which could endanger her physical and emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex.App.--San Antonio 1998, pet. denied). Based upon this record, we conclude the evidence is legally and factually sufficient to support termination of B.J.H.'s parental rights under section 161.001(1)(E). Issue two is overruled.

Having found that at least one ground for termination was established, we will review the trial court's best interest finding. Following her removal from the home and temporary custody by her uncle, I.G.H. was placed in a foster home. A psychologist testified that the animosity and conflict in the family made placement with family members unsuitable and it was in the best interest of the children for them to be cared for outside the family. A counselor who assessed I.G.H. testified that she was

13

hyperactive, anxious, cautious and made angry sounds. Her behavior was indicative of an abusive or chaotic environment. Although her prognosis was guarded, she believed that removing I.G.H. from her environment would allow for self-correction of her behavior.

According to the counselor, B.J.H. has not seen I.G.H. since she was four months old. She was two at the time of the hearing in 2010. The counselor recommended termination of parental rights and expressed that I.G.H. was very bonded to her foster family and her half-sister, who is also staying with the same family. The counselor's understanding was that the foster family was willing to adopt both girls if they were available. She also expressed concern over separating the girls who needed permanency and stability. The Department's caseworker testified that termination was in the best interest of I.G.H. for purposes of adoption. Based on this evidence, we agree with the trial court's determination that termination of B.J.H.'s parental rights to I.G.H. was in her best interest.

## CONCLUSION

Having found clear and convincing evidence to support termination under section 161.001(1)(E) and section 161.001(2) of the Texas Family Code, we affirm the trial court's order terminating B.J.H.'s parental rights to I.G.H.


Patrick A. Pirtle
Justice


14