# NO. 12-18-00078-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 349TH* |
| *Z.T., E.B. AND P.B.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *HOUSTON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

J.T. appeals the termination of her parental rights. In four issues, she challenges the legal and factual sufficiency to support the termination order. We affirm.

## BACKGROUND

J.T. is the mother of Z.T., E.B., and P.B. K.T.[1] is the father of Z.T. and J.B.[2] is the father of E.B. and P.B. On November 15, 2016, the Department of Family and Protective Services (the Department) filed an original petition for protection of Z.T., E.B., and P.B., for conservatorship, and for termination of J.T.'s, KT.'s, and J.B.'s parental rights. The Department was appointed temporary managing conservator of the children, and J.T., K.T., and J.B. were given limited access and possession of the children.

At the conclusion of the trial on the merits, the jury found that the parent-child relationship between J.T., Z.T., E.B., and P.B. should be terminated. The trial court found, by clear and convincing evidence, that J.T. had engaged in one or more of the acts or omissions necessary to

---

[1] The trial court found, by clear and convincing evidence, that Z.T.'s father, K.T., executed an unrevoked or irrevocable affidavit of relinquishment of parental rights to Z.T. Further, the trial court found that termination of the parent-child relationship between K.T. and Z.T. was in the child's best interest. Thus, the trial court ordered that the parent-child relationship between K.T. and Z.T. be terminated. K.T. is not a party to this appeal.

[2] The trial court found, by clear and convincing evidence, that E.B. and P.B.'s father, J.B., executed an unrevoked or irrevocable affidavit of relinquishment of parental rights to E.B. and P.B. Further, the trial court found that termination of the parent-child relationship between J.B., E.B., and P.B. was in the children's best interest. Thus, the trial court ordered that the parent-child relationship between J.B., E.B., and P.B. be terminated. J.B. is not a party to this appeal.

support termination of her parental rights under subsections (D), (E), (N), and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between J.T., Z.T., E.B., and P.B. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between J.T., Z.T., E.B., and P.B. be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. ***Vela v. Marywood***, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); ***In re J.J.***, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. ***Wiley v. Spratlan***, 543 S.W.2d 349, 352 (Tex. 1976); ***In re Shaw***, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2017); ***In re J.M.T.***, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2017); ***Green v. Tex. Dep't of Protective & Regulatory Servs.***, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); ***In re J.M.T.***, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2017); ***In re J.M.T.***, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; ***Wiley***, 543 S.W.2d at 351; ***In re J.M.T.***, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; ***In re J.J.***, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. ***In re J.M.T.***, 39 S.W.3d at 240.

2

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

## FACTUAL SUFFICIENCY

In her first, second, third, and fourth issues, J.T. contends that the evidence is factually insufficient to support the jury's findings that her parental rights to Z.T., E.B., and P.B. should be terminated pursuant to subsections (D), (E), (N), and (O) of Texas Family Code Section 161.001(b)(1). A point in a motion for new trial is a prerequisite to a complaint of factual insufficiency of the evidence to support a jury finding. TEX. R. CIV. P. 324(b)(2); *In re A.J.L.*, 136 S.W.3d 293, 301 (Tex. App.–Fort Worth 2004, no pet); *see also In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) (applying Texas Rule of Civil Procedure 324(b)(2) requiring motion for new trial to preserve complaint of factual sufficiency to support jury finding in parental termination cases). J.T. did not file a motion for new trial. Therefore, she has waived her complaint about the factual

sufficiency of the evidence to support the jury's findings. *See In re A.J.L.*, 136 S.W.3d at 301; *In re D.J.J.*, 178 S.W.3d 424, 426–27 (Tex. App.—Fort Worth 2005, no pet.). Accordingly, we overrule J.T.'s first, second, third, and fourth issues regarding her challenges to the factual sufficiency of the evidence.[3]

## TERMINATION UNDER SECTION 16.001(b)(1)(D)

In her first and second issues, J.T. argues the evidence is legally insufficient to support the jury's findings that her parental rights to Z.T., E.B., and P.B. should be terminated pursuant to subsections (D) and (E) of Texas Family Code Section 161.001(b)(1).

### Applicable Law

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D) (West Supp. 2017). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775-76 (Tex. App.—Texarkana 2003, no pet.). The child's "environment" refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.— Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no pet.). Further, subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. *In re N.R.*, 101 S.W.3d at 776; *Ybarra*, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. *Ybarra*, 869 S.W.2d at 577-78. It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded that risk. *In re N.R.*, 101 S.W.3d at 776. In other words, conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *In re S.M.L.*, 171 S.W.3d 472, 477

---

[3] J.T. makes no claim that failure to preserve error was unjustifiable or the result of ineffective assistance of counsel. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). Nor, on appeal, does J.T. challenge the sufficiency of the evidence to support the jury's finding that termination of her parental rights was in the best interest of the children.

(Tex. App.—Houston [14th Dist.] 2005, no pet.). We have previously concluded it is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, is not inherently a part of the "conditions and surroundings" of that place or home. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (D) is designed to protect a child from precisely such an environment. *Id*.

The court may also order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West Supp. 2017). Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.—Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d at 200.

Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well being is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Endangering conduct is not limited to actions directed towards the child. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). It necessarily follows that the endangering conduct may include the parent's actions before the child's birth and while the parent had custody of older children. *See id.* (stating that although "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury);

*see also* **In re M.N.G.**, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Further, the conduct may occur both before and after the child has been removed by the Department. **Walker v. Tex. Dep't of Family & Protective Srvs.**, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

"Endanger" means to expose to loss or injury or to jeopardize. **Boyd**, 727 S.W.2d at 533; **In re D.M.**, 58 S.W.3d at 811. It is not necessary that the conduct be directed at the child or that the child actually suffers injury. **Boyd**, 727 S.W.2d at 533; **In re J.J.**, 911 S.W.2d at 440. Domestic violence may be considered evidence of endangerment. **In re C.J.O.**, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child. *See, e.g.*, **In re C.R.**, 263 S.W.3d 368, 371 (Tex. App.—Dallas 2008, no pet.); **In re M.R.**, 243 S.W.3d 807, 818–19 (Tex. App.—Fort Worth 2007, no pet.); **Toliver v. Tex. Dep't of Family & Protective Servs.**, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

**Analysis**

In this case, the evidence shows that J.T. is the mother of ten children. Her oldest two children live with their father and her third child lives with her paternal grandparents. J.T. believed that she still had parental rights to these children. Her fifth, sixth, seventh, and tenth children were adopted; the seventh child was adopted by J.B.'s parents. At issue are her parental rights to Z.T., her fourth child, and E.B. and P.B., her eighth and ninth children.

*Reasons for removal*

This case began on September 21, 2016, alleging neglectful supervision by J.T. Eugene Hickman, a Department investigator, testified that the report stated that J.T. was abusing alcohol to the point of intoxication, blacking out while caring for her children, and that she had run from her apartment in the street half-clothed while under the influence of alcohol. He met J.T. at her house. She denied the allegations but stated that she drank beer. Hickman testified that J.T.'s home was relatively clean and he discussed J.T. obtaining an alcohol and drug assessment. J.T. denied that she had any alcohol in the house. According to Hickman, J.T. stated that she had consumed two twenty-five ounce beers prior to the day he visited her. Hickman believed that she might need family-based services.

6

Two Department workers, Katherine Knott and Alexandra Hunter, arrived at J.T.'s house on October 17, 2016, at approximately 10:30 a.m. to conduct a family-based safety services assessment. J.T. was on the front porch and had a Styrofoam cup of beer. J.T. informed the workers that she was on her second beer of the day and that she usually drank one to six beers when her situation got really bad, or two big ones. She also told the workers that the children had lice and that she had placed the three children with friends temporarily. J.T. stated that she had no vehicle, no employment, no way to take care of them, "nothing." Knott and Hunter found no visible signs of alcohol in J.T.'s home. The Department workers returned to the office and informed the investigator of their assessment.

According to J.T., the people she placed Z.T., E.B., and P.B. with told her that they would pick the children up after school. However, the children came to her house. She called Hickman, told him that she was drinking, and asked him to come get the children. Hickman stated that she told him she started drinking a bottle of Jack Daniels. According to J.T., she had half a bottle of Jack Daniels on the table of her porch. When Hickman arrived at J.T.'s house with Jennifer Molina, the CASA employee, he recalled seeing the bottle and noted that J.T.'s speech was slurred and that she struggled to maintain her train of thought. Molina also saw the bottle of Jack Daniels and recalled that the lid was off. Hickman and Molina testified that J.T. appeared intoxicated. However, J.T. denied drinking Jack Daniels, stating that she did not drink liquor.

According to Hickman, the children were initially placed in a foster home but removed after the foster mother became overwhelmed. J.T. stated that she was unable to provide for the children at that time. After the adversary hearing, the children were placed with J.B.'s parents.

*Domestic violence*

J.T. has a long history of domestic violence with J.B., the father of at least three of her children. She admitted that the children saw "lots" of family violence. She described a previous fight with J.B. over his use of pornography. During that fight, J.T. stated that he was "slinging" her everywhere and it became a "drag out" fight for both of them. J.T. testified that when J.B. locked himself in a bedroom with P.B., she got a hoe and "took the hoe to the door." J.B. exited the bedroom, they fought, and she went down the concrete steps of the house. She crawled to a neighbor's house for help and J.B. was arrested.

J.T. described another incident that occurred when she was standing in the kitchen making a bottle for P.B. She said that J.B. was complaining about never getting to see the child his parents

adopted and was getting drunk. She told him "[t]hat right there" was the reason that the child did not get to come see them. She testified that she meant their drinking and fighting. The next thing she knew, she was on the floor.

In 2015, J.B. went to prison. However, J.T. allowed J.B. to see the children before he went to prison and allowed him to live with her. During that time frame, J.T. described an incident that began when she was in the kitchen and they were both drinking. She stated that J.B. was stressed about going to prison, "ranting and raving." He shoved her and she hit the floor. She stated that she came up, hit him, and pushed him. Then, she said, J.B. stabbed her in the head with a knife. She looked at J.B., laughed, told him that he could do "whatever," that she was not going to die, and pulled the knife out. He responded by cursing at her, she began screaming, and noted that "blood [was] everywhere." J.T. told him that she did not care, that she could not do this anymore, and crawled to the vehicle in the driveway. The next morning, J.T. said, she "came to," and stated that there was blood all over the seat. She walked into the house and went into the bedroom. According to J.T., J.B. rolled over, looked at her, and said, "[y]ou are not dead yet?" She responded, "[n]o, not yet."

J.T. admitted that she had an anger problem and that, at times, she started some of the fights with J.B. and hit him. She agreed that she knowingly placed her children in danger and that their physical and emotional well-being was in danger.

### Drug and alcohol abuse

J.T. testified that she was a "binge drinker," and stated that she could be sober for a year or two, but then would drink for six months straight. At one point, she stated that she was sober for three years until after her seventh child was born. She admitted that she would drink at the beginning of her pregnancies before she knew she was pregnant. J.T. believed that her drinking was bad for the children but admitted supervising her children while under the effects of alcohol, more than just "one or two." In 2009, while pregnant with her sixth child and caring for two of her other children, she used cocaine. When she gave birth, she explained to the hospital that she used cocaine during the pregnancy.

### Criminal record

J.T. has a criminal record even though it is not particularly long. In 2009, she was convicted of driving while intoxicated with a child passenger, a felony, and the court assessed her punishment at two years' confinement and a $1,000.00 fine. However, the trial court suspended imposition of

J.T.'s sentence and placed her on community supervision for five years. In 2015, J.T.'s community supervision was modified and extended for another five years. In 2017, her community supervision was again modified. However, J.T. stated that her community supervision was revoked and she went to jail on May 1, 2017. Then, on September 13, 2017, she went to rehabilitation and was in rehabilitation at the time of trial.

*Department history*

J.T. has a long history with the Department. These complaints included:

2007—allegations of neglectful supervision and physical neglect;

2008—allegations of neglectful supervision and physical abuse;

2009—allegations of neglectful supervision, and found "reason to believe" for neglectful supervision by J.T.;

2010—allegations of neglectful supervision involving the child that was adopted by J.B.'s parents; and

2014—allegations of neglectful supervision and physical abuse and found "reason to believe for physical abuse" by J.B. and J.T.

*Children's history and current situation*

According to J.B.'s mother, Z.T. has social problems and is withdrawn. When he came to their house, he was failing fifth grade. Now, he has an "A" average and enjoys Minecraft and robotics. He told J.B.'s mother that he did not want to be a Department child. Molina testified that Z.T. was diagnosed with adjustment disorder with mixed anxiety and depressed mood, a provisional diagnosis ofborderline intellectual functioning, child neglect, suspected victim of physical abuse, and child affected by parental relationship distress.

E.B. is the smartest child in her class, can read anything, and is never still. She is taking piano lessons and is in basketball. P.B. is "all girl," very dainty and delicate. She is the most responsible child and a "little old lady," but cannot stop talking in school. All three children have perfect attendance at school and are very healthy. However, both E.B. and P.B. lack front teeth and all their other teeth are capped. The children told J.B.'s mother that J.T. drank beer, would go to sleep, and would be mad at them when she woke. Z.T. told Molina about J.T.'s alcoholism, fights and yelling, and that "it was always his fault."

*Plans for the children*

J.T. believed that J.B.'s parents could provide for the children, but that they could not keep them safe or away from J.B. She wanted her children to be placed with another family, she wanted to pick the family, and she wanted her children to be in the custody of the Department until they are eighteen years old, "[i]f that's what it takes." Unless J.B.'s parents do something to keep J.B. away from the children, she wanted the children in foster care for the rest of their childhood. According to Molina, she believed it would be "devastating" for the children to be removed from their current placement with J.B.'s parents.

J.B.'s mother stated that she adopted J.T.'s seventh son, who is also J.B.'s son. She knew about the domestic violence between the parents. J.B.'s mother stated that she would not want J.B. or J.T. to be around the children without her or her husband supervising. J.B.'s mother believed the children needed a stable home. According to J.B., he was released from prison and was living in a recreational vehicle at one of his parents' rental properties.

Ashley Hardin, the Department caseworker, testified that J.T. could not offer a safe and appropriate home for the children. Moreover, she said, the Department made a "terrible parent," and that the children needed stability. She testified that J.T. never expressed a desire to be a mother to her children. Further, Hardin stated that J.T. was not able to comply with nine of the tasks on her service plan because she did not maintain contact with the Department or advise them of her current address. Nor had she been able to maintain employment or safe housing.

*Recommendations*

J.T. wanted the children to be safe, to be provided for, and to be stable. She did not want the children to remain with J.B.'s parents. J.B.'s mother believed it would harm the children to move them from her house. She stated that they are settled, comfortable in school, and know they are loved. The Department recommended that J.T.'s parental rights be terminated and planned to have the children adopted. Molina, the CASA employee, stated that it was in the children's best interest for J.T.'s parental rights to be terminated.

## Conclusion

From this evidence, a reasonable fact finder could have determined that J.T. had a severe alcohol problem and failed to protect her children from her drinking, used drugs while pregnant with at least one of her older children, used alcohol while pregnant with several of her children, failed to protect her children from episodes of domestic violence between her and J.B., had a long

10

Department history, and had a criminal record. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D) & (E). The fact finder could have also formed a firm belief or conviction that J.T. failed to comply with her service plan because she did not maintain contact with the Department, failed to see how her alcohol abuse affected the children and the removal of the children from her home, and failed to see how removing the children from their current placement would not be in their best interest. *See id.* The evidence also demonstrated that J.T.'s home life was chaotic, revealing domestic violence, continued illegal drug use and binge drinking, continued allegations of neglectful supervision and physical neglect of her children, and an unstable home life that endangered the children's physical and emotional well being. *See In re M.R.J.M.*, 280 S.W.3d at 503; *In re R.W.*, 129 S.W.3d at 739.

Therefore, we hold that the evidence, viewed in the light most favorable to the jury's findings, was sufficiently clear and convincing that a reasonable trier of fact could have formed a firm belief or conviction that J.T. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, and that J.T. knowingly engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well being of the children. *See In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule J.T.'s first and second issues regarding legal sufficiency.

## DISPOSITION

Having overruled J.T.'s first, second, third and fourth issues regarding her challenges to the factual sufficiency of the evidence, and J.T.'s first and second issues regarding her challenges to the legal sufficiency of the evidence, we ***affirm*** the judgment of the trial court.[4]

BRIAN HOYLE
Justice

Opinion delivered September 19, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[4] Because we conclude that the evidence is legally sufficient to support termination of J.T.'s parental rights under subsections (b)(1)(D) and (b)(1)(E), we need not address J.T.'s third and fourth issues regarding the legal sufficiency of the evidence as to subsections (b)(1)(N) or (b)(1)(O). *See* TEX. FAM. CODE ANN § 161.001(1); TEX. R. APP. P. 47.1. J.T. does not dispute the trial court's finding that termination was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

## SEPTEMBER 19, 2018

## NO. 12-18-00078-CV

### IN THE INTEREST OF Z.T., E.B. AND P.B., CHILDREN

Appeal from the 349th Judicial District Court
of Houston County, Texas (Tr.Ct.No. 16-0246)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*