# NO. 12-24-00214-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF O.N.V. AND O.H.V., CHILDREN* | *§* | *APPEAL FROM THE 273RD* |
| | *§* | *JUDICIAL DISTRICT COURT* |
| | *§* | *SAN AUGUSTINE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

R.G. appeals the termination of his parental rights to the children O.N.V. and O.H.V. In four issues, he challenges the sufficiency of the evidence. We affirm.

## BACKGROUND

R.G. (hereafter Father) is the father of O.N.V. and O.H.V., and J.G. is their mother. On July 29, 2021, the Department of Family and Protective Services (the Department) filed an original petition for the protection of O.N.V. and O.H.V., for conservatorship, and for termination of Father's parental rights.[1] On December 16, 2022, the court entered a Final Order in Suit Affecting Parent-Child Relationship, in which the Department was appointed permanent managing conservator of O.N.V. and O.H.V., with Father and J.G. named possessory conservators.

On May 8, 2023, the Department filed its Original Petition to Modify Prior Order in Suit Affecting the Parent-Child Relationship. Thereafter, the foster parents of O.N.V. and O.H.V. filed a petition in intervention in the suit, with the intent to petition to adopt the children post-termination. At the conclusion of a bench trial, the Associate Judge found, by clear and

---

[1] The Department also sought and obtained termination of J.G.'s parental rights; however, her appeal was dismissed and is not before this Court. J.G.'s parental rights as to a third child, O.S.G., were also terminated, but Father is not O.S.G.'s parent.

convincing evidence, that Father engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), and (O) of Texas Family Code Section 161.001(b)(1). The Associate Judge also found that termination of the parent-child relationship between Father and both O.N.V. and O.H.V., respectively, was in the children's best interest. Based on these findings, the Associate Judge ordered that the parent-child relationship between Father and the children be terminated. The Associate Judge's order was thereafter adopted as an order of the court. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights involves fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action permanently sunders the bonds between parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). "[W]e must exercise the utmost care in reviewing the termination of parental rights to be certain that the child's interests are best served and that the parent's rights are acknowledged and protected." *Vela*, 17 S.W.3d at 759.

Section 161.001(b) of the Texas Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001(b) (West 2023). The movant must show that (1) the parent committed one or more predicate acts or omissions, and (2) termination is in the child's best interest. *See id.* § 161.001(b)(1), (2). Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001(b); *Wiley*, 543 S.W.2d at 352.

The "clear and convincing" evidentiary standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. "Clear and convincing evidence" is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2023). The party

seeking termination of parental rights bears the burden of proof. ***In re J.F.C.***, 96 S.W.3d at 256, 294 (Tex. 2002).

### STANDARD OF REVIEW

When presented with a challenge to both the legal and factual sufficiency of the evidence, an appellate court must first review the legal sufficiency of the evidence. ***Glover v. Tex. Gen. Indem. Co.***, 619 S.W.2d 400, 401 (Tex. 1981); ***In re M.D.S.***, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). When reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." ***In re J.F.C.***, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. ***Id.*** If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. ***Id.*** The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. ***Nordstrom v. Nordstrom***, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

When reviewing the factual sufficiency of the evidence, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. ***In re C.H.***, 89 S.W. 3d 17, 25 (Tex. 2002). We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing, and we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. ***In re J.F.C.***, 96 S.W. 3d at 266. If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. ***Id.***

### TERMINATION UNDER § 161.001(B)(1)(D) AND (E)

R.G. argues in his first and second issues that the evidence is legally and factually insufficient to support the trial court's predicate findings that his parental rights to O.N.V. and

O.H.V. should be terminated pursuant to subsections (D) and (E) of Texas Family Code Section 161.001(b)(1).

**Applicable Law**

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN.§ 161.001(1)(D). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775-76 (Tex. App.—Texarkana 2003, no pet.). The child's "environment" refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no pet.). Further, subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. *In re N.R.*, 101 S.W.3d at 776; *Ybarra*, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. *Ybarra*, 869 S.W.2d at 577-78. It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded that risk. *In re N.R.*, 101 S.W.3d at 776. In other words, conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Interest of R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024).[2] We have previously concluded it is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, is not inherently a part of the "conditions and surroundings" of that place or home. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (D) is designed to protect a child from precisely such an environment. *Id.*

---

[2] "Endanger" means to expose to loss or injury or to jeopardize. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.M.*, 58 S.W.3d 802, 811 (Tex. App.—Fort Worth 2001, no pet.).

4

Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d 802, 811 (Tex. App.—Fort Worth 2001, no pet.). Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional wellbeing is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634. Because the evidence pertaining to subsections (D) and (E) is interrelated, we conduct a consolidated review. *See In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.).

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Endangering conduct is not limited to actions directed towards the child, but may include the parent's actions before the child's birth and while the parent had custody of older children. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see also In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Further, the conduct may occur before the child's birth and both before and after the child has been removed by the Department. *Walker v. Tex. Dep't of Family & Protective Srvs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). It is further not necessary that the endangering conduct causes the child to actually suffer injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440. Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child. *See, e.g., In re C.R.*, 263 S.W.3d 368, 371 (Tex. App.—Dallas 2008, no pet.); *In re M.R.*, 243 S.W.3d 807, 818–19 (Tex. App.—Fort Worth 2007, no pet.); *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

## Analysis

Gabriell Arndt, the case manager employed by the Texas Family Care Network (through its contract with the Department), testified at trial that the Department's involvement with the

family originally arose from O.N.V. and O.H.V. testing positive for marijuana at birth. J.G. admitted to using marijuana while pregnant, while Father refused to take a drug test. The case was referred to Family Based Safety Services (FBSS) in an effort to keep the family intact. Father subsequently refused to engage in any of the services offered by FBSS, while J.G. failed to comply with the Family Plan of Service in multiple ways, including failing to attend counseling and testing positive for substances including marijuana, amphetamine, and methamphetamine. These omissions led the Department to seek removal of the children from the home in July of 2021.

Father did not begin consistently complying with drug testing until approximately July of 2022, and frequently tested positive for methamphetamine and marijuana. Arndt noted a pattern wherein Father failed to test, and then tested positive for methamphetamine the following time. Father completed an outpatient rehabilitation program in January of 2023, but continued to test positive for substances. He completed a second outpatient rehabilitation program in March 2024. Father's last positive test was in August of 2023, with all subsequent tests being negative, but he failed to report for drug testing five times between August 2023 and the time of trial. A factfinder may reasonably infer from a parent's refusal to complete scheduled drug screenings that the parent is avoiding screening because he is using drugs. *Interest of E.A.R.*, 672 S.W.3d 716, 723 (Tex. App.—San Antonio 2023, pet. denied) (citing *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.)). A parent's use of narcotics and its effect on his ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re R.W.*, 129 S.W.3d at 739. Moreover, evidence that the parent continued to use illegal drugs even though the parent knew his parental rights were in jeopardy constitutes conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being. *See Interest of S.A.*, 665 S.W.3d 59, 70 (Tex. App.—Tyler 2022, pet. denied); *In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied). Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under subsection (E). *Walker*, 312 S.W.3d at 617-18.

Arndt related that Father was difficult to communicate with, whether by phone or in person, and was only willing to talk to her when he was angry about something. Arndt further stated that at the most recent supervised visit (which occurred at a children's museum), Father

and J.G. arrived late, and Father became disengaged toward the end of the four-hour time period and asked to leave an hour early. Father's plan of service included completion of counseling and a parenting class, which he did not complete at any point during the pendency of this case. A court may consider a parent's failure to complete a service plan as part of the endangering conduct analysis. *See Interest of S.A.*, 665 S.W.3d at 70 (citing *In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App.–Fort Worth July 16, 2015, no pet.) (mem. op.)).

Since 2021, J.G.'s drug tests were regularly positive for marijuana and occasionally positive for other illegal substances despite her completion of two courses of outpatient rehabilitation. J.G. testified that she and Father were romantically involved "on and off," but they intended to live together for the foreseeable future. She denied ever using amphetamine or methamphetamine and could not explain why she tested positive for those substances on multiple occasions. J.G. admitted using marijuana "with [her children] in the home" for "two years and six months" prior to July 2021, and saw no safety concern with her actions. She specified that she waited until the children were asleep and then went outdoors to smoke marijuana. She knew, since the beginning of the Department's involvement in this case, that she was not supposed to use marijuana (because it is illegal and against the court-ordered service plan), and could not give a reason that she continued to use. However, Father knew about and expressed disapproval of her marijuana use during pregnancy. Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *Interest of E.G.*, 643 S.W.3d 236, 251 (Tex. App.—Amarillo 2022, no pet.). Inappropriate or unlawful conduct by persons who live in a child's home or with whom a child is compelled to associate on a regular basis at home is a part of the "conditions or surroundings" of the child's home under subsection (D). *Id.* at 251-52. A parent's exposure of children to drug use may be properly considered in determining whether a parent demonstrates appropriate parenting abilities. *Interest of S.B.*, 597 S.W.3d 571, 587 (Tex. App.—Amarillo 2020, pet. denied).

From the above evidence, a reasonable fact finder could have formed a firm belief or conviction that Father used illegal drugs during this case and failed to complete multiple requirements of his service plan. Further, the evidence allowed for the formation of a firm belief that Father knew of J.G.'s previous illegal drug use around the children, and intended, if the children were returned to him, to reside with J.G. and expose the children to her continued use of

7

illegal substances. Therefore, we hold that the evidence, viewed in the light most favorable to the finding, was sufficiently clear and convincing that a reasonable trier of fact could have formed a firm belief or conviction that Father knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. *See **In re J.F.C.***, 96 S.W.3d at 266. Although J.G. testified that she did not believe Father ever used drugs despite the positive tests, this evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding. *See **In re C.H.***, 89 S.W.3d at 25. Therefore, we conclude that the evidence is legally and factually sufficient to support termination of Father's parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b). We overrule Father's first and second issues.[3]

## BEST INTEREST OF THE CHILD

In issue four, R.G. argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in the children's best interest.

### Applicable Law

Trial courts have wide latitude in determining a child's best interest. ***Interest of I.N.B.***, 662 S.W.3d 631, 647 (Tex. App.—Beaumont 2023, no pet.). In determining the best interest of the child, courts consider a non-exhaustive list of factors, including: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the child's best interest; (6) plans for the child by these individuals or the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the parent's acts or omissions. ***Holley v. Adams***, 544 S.W.2d 367, 371-72 (Tex. 1976).

---

[3] Because we overrule Father's first and second issues, we do not consider his third issue regarding whether the evidence supports termination of his parental rights to O.N.V. and O.H.V. under Texas Family Code, Section 161.011(b)(1)(O). *See* TEX. R. APP. P. 47.1.; ***In re N.G.***, 577 S.W.3d 230, 237 (Tex. 2019).

The Texas Family Code also provides a list of factors that we will consider in conjunction with the *Holley* factors. TEX. FAM. CODE ANN. § 263.307(b) (West 2023). These statutory factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.*

No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The evidence need not prove all the statutory or *Holley* factors to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d at 814. Evidence supporting the statutory predicate grounds for termination of parental rights is also probative in determining whether termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28-29. In conducting a best-interest analysis, "a court may consider not only direct evidence but also may consider circumstantial evidence, subjective factors, and the totality of the evidence." *In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). We will apply the relevant statutory and *Holley* factors below.

**Analysis**

In this case, as discussed above, there is evidence of an extensive history of substance abuse by both Father and J.G., the continuation of which presented a danger to the children if placed with Father and J.G. A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re M.J.R.M.*, 280 S.W.3d at 502. Generally, in the three years between the children's removal and the time of trial, there was little evidence that Father was willing or able to effect positive personal changes. Moreover, Father showed unwillingness to either cooperate with agency supervision (as illustrated by his frequent failure to drug test and his poor communication with Arndt) or complete the required counseling services.

Record evidence showed that Father exhibited questionable parenting abilities during his interactions with the children. Arndt testified that in her observation, Father stopped engaging with O.N.V. and O.H.V. during visits and sat by himself, and at some visits, he and J.G. played a video for the children on a phone rather than interacting with them. Moreover, Father and J.G. were frequently late to visits and sometimes left before the end of the scheduled visitation period. Similarly, Kimberly Griffin, a CASA volunteer, testified that Father did not regularly initiate contact with the children during visits, but waited for them to "come to him first." She stated that although Father and J.G. were happy to attend brief visits with the children, neither parent seemed to feel any sense of urgency to secure the children's return.

Pertaining to the stability of the proposed placement for O.N.V. and O.H.V., R.B., the children's foster father, testified that he and his wife intervened to request termination because they wanted to adopt the children. He believed that adoption was in the children's best interest because he and his wife could provide a stable home with opportunities for success. He noted that both O.N.V. and O.H.V. were placed with older children in daycare because they were performing well, and that both participated in music lessons. R.B. stated, "We don't do drugs or alcohol in our house." He testified that the children had positive relationships with a social support system of both friends and family members. Related to the children's feelings about returning to live with J.G. and Father, R.B. testified that when the children returned from a visit, they were fussy, depressed, and frustrated, and he believed the adoption would provide the children with normalcy.

After reviewing the evidence and examining the statutory and *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of R.G.'s parental rights was in the best interest of O.N.V. and O.H.V., and therefore, the evidence of best interest is legally sufficient. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Although some evidence might weigh against the trial court's finding, such as the fact that O.N.V. and O.H.V. have some emotional attachment to Father and he participated in substance abuse rehabilitation programs, this evidence is not so significant that a reasonable fact finder could not have reconciled the evidence in favor of its finding and formed a firm belief or conviction that terminating Father's parental rights is in O.N.V.'s and O.H.V.'s best interest. We therefore conclude that the evidence supporting the trial court's finding that termination of Father's parental rights is in the children's best interest is factually sufficient. We overrule Father's fourth issue.

## DISPOSITION

Having overruled R.G.'s first, second, and fourth issues, we ***affirm*** the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered August 29, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 29, 2024**

**NO. 12-24-00214-CV**

**IN THE INTEREST OF O.S.G., O.N.V. AND O.H.V., CHILDREN**

Appeal from the 273rd District Court

of San Augustine County, Texas (Tr.Ct.No. CV-21-10180)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*